MATTHEW H. DAWSON (State Bar No. 307350)
mdawson@kslaw.com
KING & SPALDING LLP
601 South California Avenue, Suite 100
Palo Alto, California 94304
Telephone: (650) 422-6700
Facsimile: (650) 422-6800

JEFFREY S. CASHDAN (*pro hac vice* forthcoming)
jcashdan@kslaw.com
ZACHARY A. MCENTYRE (*pro hac vice* forthcoming)
zmcentyre@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

JULIA C. BARRETT (*pro hac vice* forthcoming)
jbarrett@kslaw.com
KING & SPALDING LLP
500 W. 2nd Street
Austin, Texas 78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100

*Counsel for Defendants*
PROGRESSIVE SELECT INSURANCE COMPANY
AND PROGRESSIVE CASUALTY INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

TASHA STACK, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

PROGRESSIVE SELECT INSURANCE COMPANY, PROGRESSIVE CASUALTY INSURANCE COMPANY, and DOES 1 through 50, inclusive,

Defendants.

Case No. 3:20-cv-00338-LB

**NOTICE OF PROGRESSIVE SELECT INSURANCE COMPANY AND PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Date:** **May 14, 2020**
**Time:** **9:30 a.m.**
**Location:** **Courtroom B – 15th Floor**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....... 1

I. STATEMENT OF ISSUES TO BE DECIDED ....... 1

II. INTRODUCTION ....... 2

III. RELEVANT FACTUAL BACKGROUND ....... 3

A. Plaintiff's Insurance Policy. ....... 3

B. Plaintiff's Collision and Insurance Claim. ....... 4

C. Plaintiff's Claims. ....... 6

IV. ARGUMENT ....... 7

A. Plaintiff Lacks Article III Standing to Sue Progressive Select or Progressive Casualty ....... 7

B. Plaintiff's Claims Should be Dismissed Under the Appraisal Provision in the Policy. ....... 8

C. The CLRA Does Not Apply to Insurance. ....... 12

D. Plaintiff's Complaint Fails to State A Claim Upon Which Relief May Be Granted. ....... 13

1. Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard. ....... 13

a. Plaintiff fails to allege that the Progressive Defendants made any knowingly false statements with the intent to defraud Plaintiff. ....... 15

b. Plaintiff did not rely on any of the allegedly false statements. ....... 18

2. Plaintiff Fails to State a Claim for Bad Faith Under California Law. ....... 20

3. Plaintiff's Breach of Contract Claim Fails Because Plaintiff Insufficiently Alleges That Her Total Loss Was Undervalued. ....... 21

V. CONCLUSION ....... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................13

*Avakian v. Wells Fargo Bank, N.A.*,
No. 18-cv-5766-MWF, 2019 WL 3064426 (C.D. Cal. May 10, 2019)....................15, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................13

*Bower v. AT&T Mobility, LLC*,
196 Cal. App. 4th 1545 (2011)....................18

*Bruckley v. Cracchiolo*,
No. 2:13-cv-4609–CAS, 2014 WL 545751 (C.D. Cal. Feb. 7, 2014)....................12, 13

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007)....................8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010)....................7

*Das v. WMC Mortg. Corp.*,
831 F. Supp. 2d 1147 (N.D. Cal. 2011)....................3, 13

*Easter v. Am. West Fin.*,
381 F.3d 948 (9th Cir. 2004)....................8

*Enger v. Allstate Ins. Co.*,
407 F. App'x 191 (9th Cir. 2010)....................9, 10, 12

*Enger v. Allstate Ins. Co.*,
682 F. Supp. 2d 1094 (E.D. Cal. 2009), *aff'd*, 407 F. App'x 191 (9th Cir. 2010)....................6, 9, 10, 11

*Fairbanks v. Superior Court*,
46 Cal. 4th 56 (2009)....................12

*Fraley v. Allstate Ins. Co.*,
81 Cal. App. 4th 1282 (2000)....................20

*Gentry v. State Farm Auto Ins. Co.*,
726 F. Supp. 2d 1160 (E.D. Cal. 2010)....................20

*Goldberg v. State Farm Fire & Cas.*,
No. 01-cv-11193 LGB (EX), 2002 WL 768893 (C.D. Cal. Apr. 5, 2002), *aff'd* 88 F. App'x 197 (9th Cir 2004) ....................12

*InfoStream Grp., Inc. v. PayPal, Inc.*,
No. 12-cv-748 SI, 2012 WL 3731517 (N.D. Cal. Aug. 28, 2012)....................14, 17, 19

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................14

*Lambert v. Carneghi*,
158 Cal. App. 4th 1120 (2008) ....................9

*Lee v. Am. Nat'l Ins. Co.*,
260 F.3d 997 (9th Cir. 2001) ....................8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................21

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................18, 19

*Massachusetts Casualty Ins. Co. v. Katz*,
No. 12-cv-4133-GHK, 2012 WL 12886215 (C.D. Cal. Oct. 17, 2012) ....................20

*Miller v. City & Cty. of San Francisco*,
187 Cal. App. 2d 480 (Ct. App. 1960)....................16

*Morris v. Paul Revere Life Ins. Co.*,
109 Cal. App. 4th 966 (2003) ....................16

*Morrison v. U.S. Dep't of Justice*,
No. 13-cv-00654 JSW, 2013 WL 1964930 (N.D. Cal. May 10, 2013) ....................13

*Pavlina v. Safeco Ins. Co. of Am.*,
No. 12-CV-534-LHK, 2012 WL 5412796 (N.D. Cal. Nov. 6, 2012)....................6, 9, 10, 11

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018)....................18

*Perez v. State Farm Mut. Auto. Ins. Co.*,
No. C 06-01962 JW, 2011 WL 5833636 (N.D. Cal. Nov. 15, 2011) ....................7, 8

*Petrosyan v. AMCO Ins. Co.*,
No. 12-cv-06876 SJO, 2012 WL 12884920 (C.D. Cal. Oct. 9, 2012)....................16

*Platt Pac., Inc. v. Andelson*,
6 Cal. 4th 307 (1993) ....................9

*Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831 (2007) ....................20, 21

*RHUB Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339 (N.D. Cal. 2017) ....................13, 16

*Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................18

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ....................7

*Takhar v. Kessler*, 76 F.3d 995 (9th Cir. 1996) ....................7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................14, 17

*Wallis v. Centennial Ins. Co.*, 927 F. Supp. 2d 909 (E.D. Cal. 2013)....................8

*Zhang v. Superior Court*, 57 Cal. 4th 364 (2013) ....................13, 14

**Statutes**

California Business and Professions Code §§ 17200–17209 .................... *passim*

California Civil Code §§ 1750–1784.................... *passim*

**Other Authorities**

10 C.C.R. § 2695.1....................13

10 C.C.R. § 2695.8....................4, 17

Federal Rules of Civil Procedure 9(b) ....................1, 3, 13, 14

Federal Rule of Civil Procedure 12(b)(1) ....................1, 7

Federal Rule of Civil Procedure 12(b)(6) ....................1, 22

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 14, 2020 at 9:30 a.m., or at such other date as may be agreed upon or ordered—in the United States District Court for the Northern District of California, before the Honorable Laurel Beeler—Defendants Progressive Select Insurance Company ("Progressive Select") and Progressive Casualty Insurance Company ("Progressive Casualty") (together, the "Progressive Defendants")[1] will and hereby do move to dismiss Plaintiff Tasha Stack's Complaint ("Complaint").

The Progressive Defendants' Motion to Dismiss is based on the following Memorandum of Points and Authorities, the Complaint, all documents attached to the Complaint, and the Declaration of Matthew Dawson and all documents attached thereto. The Progressive Defendants respectfully request that the Court dismiss all of Plaintiff's claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF ISSUES TO BE DECIDED

1. Does Plaintiff lack Article III standing under Federal Rule of Civil Procedure 12(b)(1) because neither Progressive Select nor Progressive Casualty insured Plaintiff's total loss vehicle?
2. Must Plaintiff's claims be dismissed because Plaintiff has failed to complete the appraisal process required under the terms of her automobile insurance policy?
3. Is the Consumer Legal Remedies Act ("CLRA") unavailable for cases related to insurance?
4. Do Plaintiff's claims warrant dismissal for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b)? Specifically:
   a) Should Plaintiff's fraud-based claims be dismissed as inadequately pled under Rule 9(b)?
   b) Does the fact that the Progressive Defendants provided Plaintiff with a reasonable settlement offer preclude a claim for bad faith?

---

[1] Plaintiff sued the wrong defendants in this lawsuit. As explained below, neither Progressive Select nor Progressive Casualty wrote Plaintiff's insurance policy, and so Plaintiff has no viable claim against either of them.

c) Did Plaintiff fail to sufficiently plead undervaluation such that her breach of contract claim should be dismissed?

## II. INTRODUCTION

Plaintiff Tasha Stack ("Plaintiff") disagrees with the amount United Financial Insurance Company ("United Financial") determined her vehicle was worth after it was totaled in a collision. After Plaintiff expressed her disagreement with United Financial's valuation, the parties negotiated for months—which included United Financial agreeing to re-assess the condition of Plaintiff's loss vehicle. Plaintiff ultimately accepted United Financial's offer to settle her total loss claim. But then, 18 months later, Plaintiff filed this lawsuit, asserting six claims based on Plaintiff's allegation that her total loss vehicle was not only undervalued, but that it was fraudulently undervalued through the use of alleged deceptive "schemes." Plaintiff inexplicably asserts those claims not against United Financial—the entity that underwrote her insurance policy—but against totally separate entities, Progressive Casualty and Progressive Select.

Plaintiff's claims are foreclosed as a matter of law for three threshold reasons. ***First***, because Plaintiff was not insured by either Progressive Select or Progressive Casualty, she lacks Article III standing to sue either entity. The Progressive Defendants notified Plaintiff that she sued the wrong entities before filing this Motion, but Plaintiff has taken no steps to remedy the problem. The Court, therefore, should dismiss the Complaint.

***Second***, even if Plaintiff had sued United Financial instead of Progressive Casualty and Progressive Select, her claim would be subject to dismissal because, by letter dated February 28, 2020, United Financial invoked the appraisal provision in Plaintiff's insurance policy. Once invoked, that appraisal provision is a mandatory pre-condition to any suit. The claims in the Complaint accordingly must be dismissed in favor of the mandatory appraisal process.

***Third,*** at a minimum, Plaintiff's CLRA claim fails as a matter of law because, by its own terms, the CLRA does not apply to automobile insurance.

Plaintiff's Complaint also fails in other respects. Plaintiff fails to plead her fraud-based claims—including her claims for negligent misrepresentation and violation of the UCL—with the requisite specificity required by Rule 9(b). Plaintiff does not allege facts indicating that any of the statements made during the negotiation of her total loss claim were false, that the Progressive Defendants acted with knowledge of falsity or the intent to defraud, or that Plaintiff relied on any alleged misrepresentation to her detriment. Plaintiff likewise does not plausibly allege any bad faith conduct. Instead, the Complaint makes clear that this is a mere disagreement over the value of Plaintiff's total loss vehicle better resolved through the appraisal process, requiring dismissal of both her bad faith and breach of contract claims until the value of Plaintiff's vehicle is determined through appraisal.

For these reasons, as described more fully below, the Progressive Defendants respectfully request that the Court dismiss the Complaint.

## III. RELEVANT FACTUAL BACKGROUND

### A. Plaintiff's Insurance Policy.

Plaintiff purchased an automobile insurance policy ("Policy") from United Financial, not Progressive Select or Progressive Casualty, in July 2009. Compl. ¶¶ 48, 50–51; Auto Insurance Coverage Summary, Declarations Page, at 2, Ex. 1 to the Declaration of Matthew Dawson ("Dawson Decl."), attached hereto as Ex. A.[2] The Policy states that in the event of a total loss, United Financial would pay Plaintiff the "lowest of" the values set forth in the Policy, one of which was the "actual cash value" of the vehicle. The Policy provides that the "actual cash value" of the vehicle would be determined based on its "market value, age, and condition of the vehicle at the time the loss occurs." Compl. ¶¶ 50–51; *id.* Ex. A (Policy, Part IV, at 23–24). The Policy also specifies that in adjusting claims, United Financial "may use estimating, appraising,

---

[2] For purposes of ruling on a motion to dismiss, "the pleadings are deemed to include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1152 (N.D. Cal. 2011) (marks and citations omitted). Because the Complaint relies extensively on the Policy, which is attached as Ex. A to the Complaint, and the parties cannot reasonably dispute its authenticity, the Court may consider the Declarations Page, which is a page of the Policy omitted from Exhibit A.

or injury evaluation systems," including "computer software, databases, and specialized technology" developed by "a third party." Policy, Part VII, at 29. The procedures for determining total loss value are further set out in California's Total Loss Regulation, 10 C.C.R. § 2695.8(b).

Plaintiff's Policy also contains an appraisal provision, providing that in the event of a disagreement on the amount of a loss, either United Financial or the insured may demand an appraisal of the loss vehicle. Policy, Part IV, at 25. The Policy further states that "[w]ithin 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity." *Id*. The appraisal provision is mandatory once invoked by either party. *Id.* at 32 ("We may not be sued unless there is full compliance with all the terms of this policy.").

**B. Plaintiff's Collision and Insurance Claim.**

On February 9, 2018, Plaintiff's husband—Alexander Stack ("Mr. Stack")—was driving Plaintiff's 2009 Honda Civic EX when he collided with two other motor vehicles. Compl. ¶ 55. Plaintiff filed a claim under her Policy, and her Honda was deemed a total loss. *Id.* ¶ 58. Plaintiff alleges that, on February 13, 2018, she received a "full and final offer to settle Plaintiff's claim for $4,675.82" based on a Work Center Total Loss ("WCTL") valuation report. *Id.* ¶¶ 59, 60; *see also* WCTL Report, Feb. 13, 2018, attached as Ex. 2 to the Dawson Decl.[3] Plaintiff alleges that the amount reflected on the WCTL report was "$20,324.18 less than what Plaintiff paid for the" vehicle in 2009, and "less than the amount promised under the [] Policy." Compl. ¶ 62. According to Plaintiff, the WCTL report included a comparable vehicle with a salvaged title and failed to appropriately adjust for the salvaged title. *Id*. ¶¶ 63, 67–68. Plaintiff further claims that the WCTL report included four comparable vehicles that were quotes from dealers, but that the Progressive Defendants never contacted the dealers for the quotes. *Id*. ¶ 69.

---

[3] The Complaint indicates that the WCTL Report was attached as Ex. B. Compl. ¶¶ 60, 65. But the WCTL Report was not attached to the Complaint. In any event, the WCTL Report is integral to the allegations in the Complaint and thus may be considered by the Court without converting the motion to one for summary judgment. *See supra* note 2.

Plaintiff alleges that, between February 9, 2018, and April 2018, Mr. Stack and the Progressive Defendants engaged in a "series of telephone conversations and emails" where Mr. Stack "continuously disputed" the Progressive Defendants' valuation of Plaintiff's total loss vehicle. Compl. ¶ 71. Specifically, Plaintiff alleges that on February 19, 2018, Mr. Stack spoke with a "Progressive representative" to "refute the conditioning adjustment" and "the comparable value listed in the" WCTL report. *Id.*¶ 72. Plaintiff also alleges that, on an unspecified date, she requested that the Progressive Defendants consider the $25,000 purchase price of Plaintiff's own total loss vehicle—which was purchased in May 2009—as a "comparable vehicle." Compl. ¶ 64. Plaintiff further alleges that on February 21, 2018, Mr. Stack sent the Progressive Defendants "approximately twenty-five (25) separate cars 'for sale' listings," but the Progressive Defendants "refused to consider" these vehicles as comparable vehicles. *Id.* ¶ 74.

On February 27, 2018, Mr. Stack spoke with a supervisor, Carlos Hernandez, to "vocalize[] his concern with Progressive's evaluation and [] inaccuracies in" the "condition assessment." *Id*. ¶ 76. One day later, Carlos Hernandez emailed Mr. Stack and informed him that the Progressive Defendants stood by the condition assessment of Plaintiff's total loss vehicle. *Id*. ¶ 77. Indeed, the Progressive Defendants noted that the condition rating assigned to Plaintiff's vehicle should have been lower, but that they would let the higher rating stand. *Id*. Finally, the Progressive Defendants informed Mr. Stack that if he still disagreed with the valuation, Plaintiff could invoke the appraisal clause in Plaintiff's Policy. *Id*.

After disputing the valuation of her vehicle for months, Plaintiff admittedly accepted the final settlement offer of $4,675.82. *Id*. ¶¶ 84, 90, 93. Plaintiff alleges that she "was induced to accept a reduced valuation" for her vehicle based on the Progressive Defendants' "misrepresentations" and that she was unaware "of all the false representations made by the Progressive Defendants." Compl. ¶¶ 90, 93.[4] But Plaintiff does not allege any facts supporting

[4] On February 23, 2018, the Progressive Defendants apparently made a second attempt to determine the actual cash value of Plaintiff's vehicle using two additional comparable vehicles. Compl. ¶ 69. Plaintiff also alleges that the Progressive Defendants obtained dealer quotes at one point in the claim negotiation process. *Id.* ¶ 76. However, Plaintiff alleges that she ultimately accepted the amount reflected on the first WCTL valuation report based on the eleven

her allegation that any of the representations made in the course of adjusting her vehicle were false, that the Progressive Defendants acted with knowledge of any false statement, or that she relied on any of these alleged misrepresentations to her detriment. In fact, Plaintiff concedes that she ultimately accepted $4,675.82 to settle her total loss claim because she did not want to have to "go through a long and costly process." *Id.* ¶ 84.

On February 28, 2020, United Financial invoked the appraisal provision in Plaintiff's Policy. Appraisal Letter, Ex. 3 to the Dawson Decl. Per the appraisal provision, the Progressive Defendants designated their appraiser on March 5, 2020. Designation Letter, Ex. 4 to the Dawson Decl. Plaintiff is required to designate her appraiser by March 30, 2020. Policy at 25.[5]

**C. Plaintiff's Claims.**

Plaintiff asserts six claims against Progressive Select and Progressive Casualty: (Count I) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17209 ("UCL"); (Count II) fraud; (Count III) negligent misrepresentation; (Count IV) breach of contract; (Count V) breach of implied covenant of good faith and fair dealing ("bad faith"); and (Count VI) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–1784 ("CLRA"). Plaintiff's claims are all based on the allegation that the Progressive Defendants have engaged in "fraudulent conduct and deceptive practices" to "undervalue payments to insureds whose cars have been declared a total loss." Compl. ¶ 6. In particular, Plaintiff contends that her WCTL report was "false and misleading" because it used "out of market" comparable vehicles and used vehicles that were prior total losses without adjusting the condition of the loss

---

comparable vehicles located in California. *Id.* ¶¶ 60–62; 93. Any subsequent valuation report was accordingly not used in settling Plaintiff's claim.

[5] The Progressive Defendants request that the Court take judicial notice of the letters in which United Financial invoked the appraisal clause in Plaintiff's Policy and designated United Financials' appraiser. *See Pavlina v. Safeco Ins. Co. of Am.*, No. 12-CV-534-LHK, 2012 WL 5412796, at *2 (N.D. Cal. Nov. 6, 2012) (granting defendant's request for judicial notice of relevant insurance policy and settlement offer and dismissing plaintiff's complaint in favor of the appraisal clause in plaintiff's policy); *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1097 (E.D. Cal. 2009), *aff'd*, 407 F. App'x 191 (9th Cir. 2010) (taking judicial notice of letter invoking appraisal sent after plaintiff sued).

vehicle. *Id.* ¶¶ 25–26. Plaintiff also alleges WCTL improperly reduces the amount of total loss vehicles twice or "'double dips' deductions in its methodology." *Id.* ¶¶ 40–41. Plaintiff further contends that the Progressive Defendants have engaged in "scheme[s]" to undervalue total loss vehicles, including by failing to obtain dealer quotes, refusing to consider comparable vehicles "it deemed to be priced too high," and refusing to consider the insured's purchase price as a comparable vehicle. *Id.* ¶¶ 45–47. For the reasons stated more fully below, Plaintiff's claims should be dismissed.

## IV. ARGUMENT

### A. Plaintiff Lacks Article III Standing to Sue Progressive Select or Progressive Casualty.

Plaintiff lacks Article III standing to assert claims against Progressive Select or Progressive Casualty because neither Progressive Select nor Progressive Casualty issued Plaintiff's total loss vehicle or is a party to Plaintiff's Policy. Standing is "properly raised in a Rule 12(b)(1) motion to dismiss"—either through a facial or factual attack—because it pertains to subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the Complaint facially fails to demonstrate standing.

To establish standing, Plaintiff must show: (1) she suffered a concrete and particularized injury-in-fact; (2) a causal connection between the injury and Progressive Select and/or Progressive Casualty's conduct; and (3) that the injury is fairly traceable to the challenged action of Progressive Select and/or Progressive Casualty. *See Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Critically, "[w]here a plaintiff 'did not buy any [insurance] policy from [an insurance-company defendant] and so did not suffer any injury due to [that company's] conduct,' that plaintiff lacks Article III standing to bring a case in relation to an insurance policy against that defendant." *Perez v. State*

*Farm Mut. Auto. Ins. Co*., No. C 06-01962 JW, 2011 WL 5833636, at *2 (N.D. Cal. Nov. 15, 2011) (*quoting Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001)); *see also Wallis v. Centennial Ins. Co.*, 927 F. Supp. 2d 909, 915 (E.D. Cal. 2013) (granting judgment on the pleadings where "the Complaint and attached documents show[ed] that [the defendant-insurer] [was] not a party to the insurance contract").

Plaintiff cannot have suffered an injury-in-fact resulting from any action or inaction by Progressive Select or Progressive Casualty so as to establish Article III standing because she "did not buy a[] policy from" either Progressive Select or Progressive Casualty. *Perez*, 2011 WL 5833636, at *2. The declarations page to Plaintiff's Policy, which was excluded from the copy attached to her Complaint, expressly states that United Financial underwrote her Policy. *See* Dawson Decl., Ex. 1. The Policy further defines the terms "we," "us" and "our" in the Policy to mean "the underwriting company providing the insurance, as shown on the declarations page." Policy at 3. Plaintiff therefore has not alleged and cannot allege that she has a relationship with either Progressive Select or Progressive Casualty. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 944 (S.D. Cal. 2007) (plaintiff lacked standing to state a claim against Wal-Mart Stores because she never "adequately alleged" that she "had any business relationship at all with Wal-Mart Stores"). Because Plaintiff cannot establish any causal connection between her purported injury and any conduct of Progressive Select or Progressive Casualty, or that her purported injury is fairly traceable to conduct of either named defendant, she lacks standing, and her claims against the Progressive Select and Progressive Casualty must be dismissed. *See Lee*, 260 F.3d at 1001–02; *Easter v. Am. West Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004) (dismissing claims for lack of standing where plaintiffs failed to trace the alleged injury-in-fact to the conduct of certain defendants).

### B. Plaintiff's Claims Should be Dismissed Under the Appraisal Provision in the Policy.

If the Court does not dismiss Plaintiff's Complaint outright for lack of standing, the Court should nevertheless dismiss the Complaint because United Financial invoked the appraisal

provision in the Policy.

In California, an appraisal provision in an insurance policy is "presumptively valid and should be given liberal interpretation." *Enger*, 682 F. Supp. 2d at 1098, *aff'd*, 407 F. App'x 191 (citation and marks omitted); *Lambert v. Carneghi,* 158 Cal. App. 4th 1120, 1129 (2008) ("It is well settled that an agreement to conduct an appraisal contained in a policy of insurance . . . is considered to be an arbitration agreement subject to the statutory contractual arbitration law." (citations and marks omitted)). Further, when required by the insurance policy, compliance with the appraisal provision becomes a condition precedent to suing under the Policy. *Pavlina v. Safeco Ins. Co. of Am.*, No. 12-cv-534-LHK, 2012 WL 5412796, at *6 (N.D. Cal. Nov. 6, 2012); *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993) ("Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event."). The proper remedy for failing to comply with the condition precedent of appraisal before filing suit is dismissal. *Enger v. Allstate Ins. Co*., 407 F. App'x 191, 193 (9th Cir. 2010) (affirming dismissal in favor appraisal where insurer invoked mandatory appraisal provision).

The *Enger* decision is directly on point. In that case, the plaintiff alleged that the defendant-insurer used an improper method to calculate the value of her property and thus paid "less than her personal property was worth" under her homeowner's insurance policy. 682 F. Supp. 2d at 1097–99 (marks omitted). After removing the suit from California state court to federal district court, the insurer invoked the appraisal provision in the plaintiff's insurance policy and moved to dismiss the complaint. *Id*. The district court dismissed the plaintiff's claims, holding that they "were not ripe for judicial determination" because the plaintiff "failed to comply with the appraisal process provided in her insurance policy." *Id.* at 1099. The policy at issue provided that if the parties "fail[ed] to agree as to the actual cash value or the amount of loss," then "on the written request of either, each shall select a competent and disinterested appraiser." *Id.* at 1097. The policy also stated that "no suit or action may be brought against Allstate unless there has been full compliance with all policy terms." *Id.* at 1098 (marks omitted).

The court thus explained that, "[p]ursuant to the terms of the contract, completion of the appraisal process is a precondition to Plaintiff's filing a lawsuit." *Id.* at 1099 (marks omitted).

The Ninth Circuit agreed, holding that "full compliance with the policy terms" was a "contractual prerequisite to bringing suit." *Enger*, 407 Fed. App'x at 193. The Ninth Circuit explained that the specifics of the valuation dispute were "immaterial" because the insurance policy did not contain any "exception [to the appraisal provision] where the source of the dispute [was] the valuation method" and not just the amount of the loss. *Id*. at 193. The Ninth Circuit accordingly affirmed the district court's dismissal of the insured's claims for breach of contract, violation of the UCL, and violation of the covenant of good faith and fair dealing, reasoning that absent completion of the appraisal process, "it is impossible to know whether [the insured's] claim in fact was undervalued, such that" the insured's legal claims were "viable." *Id*.

A court in this district similarly concluded that an appraisal provision in an automobile insurance policy required dismissal of a plaintiff's claims related to the insurer's valuation of the plaintiff's total loss automobile. *Pavlina*, 2012 WL 5412796, at *6. The automobile insurance policy at issue in that case, like the policy at issue in *Enger*, contains language almost identical to the Policy at issue here:

| ***Enger* Appraisal Provision:** | ***Pavlina* Appraisal Provision:** | ***Stack* Appraisal Provision:** |
|---|---|---|
| In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. | If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. | If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. |

| ***Enger* Condition Precedent:**<br><br>No suit or action may be brought against this company unless there has been full compliance with all policy terms. | ***Pavlina* Condition Precedent:**<br><br>No legal action may be brought against us until there has been full compliance with all the terms of this Policy. | ***Stack* Condition Precedent:**<br><br>We may not be sued unless there is full compliance with all the terms of this policy. |
|---|---|---|

Request for Judicial Notice Ex. A-10 at 4, Ex. A-2 at 18, *Enger v. Allstate Ins. Co*., No. 2:09-cv-2618 (E.D. Cal. Oct. 15, 2009), Doc. 17; Motion for Judgment on the Pleadings Ex. 1 at 38, 40, *Pavlina v. Safeco Ins. Co*., No. 5:12-cv-534-LHK (N.D. Cal July 26, 2012), Doc. 18-2; Policy at 25, 32.

Based on the language in the policy, the *Pavlina* court held that "a dispute over the Vehicle's actual cash value must be resolved through the appraisal process," and that "failure to comply with an insurance contract's mandatory appraisal provision constitutes sufficient basis to[] [] dismiss a case." 2012 WL 5412796, at *5 (granting judgment on the pleadings because the policy "bar[red] the Plaintiff from pursuing th[e] action . . . while the dispute over the actual cash value of the vehicle ha[d] not been addressed through appraisal").

This case is no different. Here, Plaintiff alleges that the Progressive Defendants failed to pay Plaintiff the actual cash value of her total loss automobile because the Progressive Defendants purportedly used an improper method to value her vehicle. Compl. ¶¶ 15, 28, 37. And like the plaintiffs in *Enger* and *Pavlina*, Plaintiff's Policy contains an appraisal provision that—once invoked—is a condition precedent to filing any action. *Enger*, 682 F. Supp. 2d at 1099; *Pavlina*, 2012 WL 5412796, at *2. Because Plaintiff's claims hinge on her allegation that the Progressive Defendants undervalued her total loss vehicle—*i.e.*, Plaintiff's dispute over the amount of her loss—United Financial invoked the appraisal provision in Plaintiff's Policy by a letter dated February 28, 2020. Dawson Decl., Ex. 3. Once invoked, the appraisal process is mandatory and will "resolve the dispute as to the actual cash value of" Plaintiff's total loss

vehicle, which in turn will determine if Plaintiff's legal claims are "viable." *Enger*, 407 F. App'x at 193.

In short, because the appraisal process has not been completed, Plaintiff's claims are premature and must be dismissed in favor of appraisal. *See id.*; *Goldberg v. State Farm Fire & Cas.*, No. 01-cv-11193 LGB (EX), 2002 WL 768893, at *3 (C.D. Cal. Apr. 5, 2002) (dismissing claims because the policy at issue required the parties give "the appraiser the first opportunity to address the valuation issue"), *aff'd* 88 F. App'x 197 (9th Cir 2004) ("Because Goldberg failed to get an appraisal, as required, his claim against State Farm fails.").

**C. The CLRA Does Not Apply to Insurance.**

Plaintiff's CLRA claim fails because automobile insurance is neither a "good" nor a "service" covered by the CLRA. The CLRA "prohibits specified unfair and deceptive acts and practices in a 'transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 59 (2009) (quoting Civ. Code § 1770, subd. (a)). To be subject to the CLRA, therefore, an item must be either a "good" or a "service." *Id.* Both the legislative history and the "weight of authority support[] the . . . conclusion that the CLRA does not apply to the sale of [automobile] insurance policies" because "insurance is technically neither a 'good' nor a 'service' within the meaning of the [Act]." *Bruckley v. Cracchiolo*, No. 2:13-cv-4609–CAS (PJWx), 2014 WL 545751, at *7–8 (C.D. Cal. Feb. 7, 2014) (dismissing plaintiff's CLRA claim related to coverage under an automobile insurance policy).

In an apparent attempt to sidestep the "weight of authority" holding that the CLRA does not apply to insurance, Plaintiff characterizes the "good" at issue here as the "Class Vehicles." *See* Compl. ¶ 150. But Plaintiff's claims do not involve any allegedly deceptive practices in the "sale or lease" of her vehicle. Her claims pertain solely to the benefits she contends she was owed under her insurance Policy—specifically, the amount Plaintiff alleges she was owed for her total loss vehicle. Compl. ¶ 62 ("[T]he Progressive Defendants made a full and final offer to settle Plaintiff's claim for $4,675.82, which was . . . less than the amount promised under the

Subject Policy.") That is not meaningfully different than the dispute in *Bruckley*, where the plaintiff disputed whether one automobile insurance policy was in effect at the time of his car accident and the amount of coverage provided by a second policy. 2014 WL 545751, at *1–2. Just as in *Bruckley*, therefore, Plaintiff's CLRA claim fails. *See id*.

**D. Plaintiff's Complaint Fails to State A Claim Upon Which Relief May Be Granted.**

Should the Court allow the claims in the Complaint to proceed despite the appraisal clause and Plaintiff's lack of standing, the Court should dismiss the Complaint because Plaintiff failed, as a matter of law, to plead sufficient facts to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Morrison v. U.S. Dep't of Justice*, No. 13-cv-00654 JSW, 2013 WL 1964930, at *2 (N.D. Cal. May 10, 2013) (citing *Iqbal*, 556 U.S. at 678). All factual allegations "must be enough to [rise] . . . above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 (holding that plaintiffs must do more than plead "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Plaintiff's Complaint is facially deficient as to each cause of action and must be dismissed.

**1. Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard.**

For claims that are simply "grounded in fraud," Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." *RHUB Commc'ns, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339, at *3 (N.D. Cal. 2017). Here, Plaintiff's claims for fraud, negligent misrepresentation, and for violation of the UCL and CLRA are all "grounded in fraud" and are thus subject to Rule 9(b)'s heightened pleading standard.[6] *Das v. WMC Mortg. Corp.*,

[6] The only public policy cited by Plaintiff as the basis for her UCL claim is the Total Loss Regulation, 10 C.C.R. § 2695.1 *et seq*. Compl. ¶ 113. But there is no private right of action for a violation of the of the Total Loss Regulation, nor can a UCL claim be based entirely on that

831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) (finding fraud-based negligent misrepresentation claims are "subject to the heightened pleading requirements" of Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (Rule 9(b)'s pleading requirement "applies to claims which are made in federal court under the CLRA and UCL"). Specifically, each of Plaintiff's claims is based on the same allegedly "fraudulent conduct and deceptive practices" regarding the Progressive Defendants' valuation of Plaintiff's total loss. Compl. ¶¶ 15, 25 (alleging the WCTL reports are "false and misleading"); ¶ 28 (alleging "schemes" to "defraud insurers by undervaluing the 'comparable automobiles'); ¶ 37 ("WCTL is intentionally designed to fraudulently lower the offer made by the Progressive Defendants"); ¶ 90 ("Based on these and other misrepresentations, Plaintiff was induced to accept a reduced valuation of her 2009 Honda Civic.").

To satisfy Rule 9(b), Plaintiff must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (marks and citation omitted). In addition, Plaintiff "must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written." *InfoStream Grp., Inc. v. PayPal, Inc.*, No. 12-cv-748 SI, 2012 WL 3731517, at *9 (N.D. Cal. Aug. 28, 2012) (quoting *Perlas v. GMAC Mortg.*, LLC, 187 Cal. App. 4th 429, at 434 (2010)). Plaintiff's Complaint is insufficient to satisfy Rule 9(b) because Plaintiff does not sufficiently allege any false statements with particularity, that the Progressive Defendants had knowledge of any alleged falsity or the intent to defraud Plaintiff, or that Plaintiff justifiably relied on any allegedly false statement in settling her total loss claim. *Vess*, 317 F.3d at 1105 (explaining that "[u]nder California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity,

---

regulation. *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013) ("Private UIPA actions are absolutely barred; a litigant may not rely on the proscriptions of [the UIPA] as the basis for a UCL claim.").

intent to defraud, justifiable reliance, and damages'"); *Avakian v. Wells Fargo Bank, N.A.*, No. 18-cv-5766-MWF (AGRx), 2019 WL 3064426, at *5 (C.D. Cal. May 10, 2019) (applying elements of fraud, including "knowledge of falsity" and "intent to defraud" to fraud-based UCL claim).

***a. Plaintiff fails to allege that the Progressive Defendants made any knowingly false statements with the intent to defraud Plaintiff.***

The alleged misrepresentations in the Complaint fall into two categories: (1) statements allegedly made by the Progressive Defendants during the email and telephonic communications with Mr. Stack regarding Plaintiff's claim, and (2) statements allegedly contained in the WCTL report provided to Plaintiff. Compl. ¶¶ 55–93.

With respect to the first category, Plaintiff fails to allege that any representative of the Progressive Defendants made any false statement. The only communications with the Progressive Defendants alleged in the Complaint include: (1) a conversation between Mr. Stack and Lauren Kallerman on February 19, 2018, during which Mr. Stack "refute[d] the conditioning adjustment;" (2) an email Mr. Stack sent Ms. Kallerman with alternative purportedly comparable vehicles on February 21, 2018; (3) a discussion between Mr. Stack and Carlos Hernandez on February 27, 2018, regarding Mr. Stack's "concern with Progressive's evaluation;" and (4) Mr. Hernandez's email response to Mr. Stack the next day. Compl. ¶ 72, 74, 76–77. Plaintiff also alleges that she submitted the purchase price of her own vehicle as a comparable vehicle, and that Progressive "would not accept" it "as a comparable." *Id.* ¶ 89.

Notably, Plaintiff does not allege what statement made in these communications was false, much less how any statement was false. With respect to the condition of Plaintiff's loss vehicle, the only communication from the Progressive Defendants that is alleged in any detail is the email from Mr. Hernandez on February 28, 2018, in which Mr. Hernandez describes a re-inspection of the total loss vehicle, communicates the car's assessed value, and details the

reasoning behind the condition ratings for the vehicle. Compl. ¶ 77.[7] Plaintiff makes the conclusory allegation that "Mr. Hernadez's statements were false." Compl. ¶ 78. But Plaintiff does not allege with particularity what information was false or facts supporting the conclusion that his statements were false. *RHUB*, 2017 WL 3382339, at *10 ("[T]he element of falsity requires the plaintiff to point to *facts* which show the statement was false at the time it was made" (emphasis in original)). Plaintiff also alleges that some unknown portion of the email from Mr. Hernandez included "direct misrepresentations of California law." *Id.* "[M]isrepresentation of law is not an actionable fraud," however, where "no confidential relationship exists between the parties." *Miller v. City & Cty. of San Francisco*, 187 Cal. App. 2d 480, 483 (Ct. App. 1960). No "confidential relationship" existed here. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973 (2003); *see Petrosyan v. AMCO Ins. Co.*, No. 12-cv-06876 SJO (CWx), 2012 WL 12884920, at *6 (C.D. Cal. Oct. 9, 2012) (finding an insurer's "duties [] do not give rise to a confidential relationship"). Nor is it clear what portion of Mr. Hernandez's email allegedly misrepresents the law (or what law the email allegedly misrepresents). *See* Compl. ¶¶ 77–78.

Plaintiff's allegations regarding the Progressive Defendants' refusal to consider the purchase price of Plaintiff's vehicle or the other 25 "for sale listings" submitted by Mr. Stack similarly fail to allege any false statement. Compl. ¶¶ 64, 74. All Plaintiff alleges is that the Progressive Defendants refused to consider the 25 comparable vehicles, and that "Mitchell advised" that it "would not accept" Plaintiff's purchase price as a comparable vehicle. *Id.* ¶¶ 74, 89. Plaintiff does not allege that either statement was false. At most, Plaintiff alleges that the law "requires the Progressive Defendants to consider a comparable vehicle sold in the last 60 days." Compl. ¶ 94. Assuming that legal conclusion is right, it would not render any of the Progressive

[7] Plaintiff also vaguely alleges that WCTL "double dips" for condition, that the Progressive Defendants "manipulate the condition rating system," and that WCTL "takes all discretion from the adjuster and blocks out the ability of the adjuster to label the vehicle as a 4 or 5." Compl. ¶¶ 40, 41. Plaintiff does not plainly allege that these alleged practices had any impact on the settlement of her total loss claim, but even if she had, the Complaint's vague and conclusory allegations are inadequate to serve as the basis of any of Plaintiff's claims.

Defendants' alleged statements false. But Plaintiff's legal conclusion is not right: California's Total Loss Regulation states simply that a loss vehicle's value must be determined based on comparable vehicles "available for retail purchase . . . within ninety (90) calendar days of the final settlement offer." 10 C.C.R. § 2695.8. Plaintiff admits that she purchased her Honda Civic EX nearly ***10 years before*** her total loss claim. Compl. ¶ 48. And, as to the 25 purported comparable vehicles provided by Mr. Stack, nothing in the Total Loss Regulation requires an insurer to consider comparable vehicles submitted by the insured. 10 C.C.R. § 2695.8(b)(2). Nor does Plaintiff allege sufficient information regarding the comparable vehicles—such as sale dates, locations, sale prices—or what Progressive Defendant employee refused to consider those as comparables, what that person said, or how the alleged refusal was transmitted. Compl. ¶ 64; *InfoStream*, 2012 WL 3731517, at *9. Accordingly, Plaintiff's claim that the Progressive Defendants acted unlawfully in refusing to consider the purportedly comparable vehicles offered by Plaintiff cannot serve as the basis for any of Plaintiff's fraud-based claims.

The remainder of Plaintiff's fraud-based claims appear to be based on the content of the WCTL report used to settle Plaintiff's claim. Those allegations fare no better. ***First***, Plaintiff alleges that the Progressive Defendants "never disclosed the fact that" one of the comparable vehicles on the report was a prior salvage title. Compl. ¶¶ 63, 67. Plaintiff alleges in a conclusory fashion that the Progressive Defendants "had full knowledge" this was a salvage title vehicle. *Id.* ¶ 67. But that allegation is belied by Plaintiff's contrary allegations that: (1) "WCTL determines what comparable vehicles are used," (2) "The Progressive Defendants have outsourced [] [their] duty to find 'comparable vehicles' to WCTL, and (3) that the Progressive Defendants "relied upon the Mitchell WCTL reports in determining actual cash value." *Id.* ¶ 22, 24, 82. Because Plaintiff has alleged no facts demonstrating that the Progressive Defendants investigated the comparable vehicles on the WCTL report and therefore had knowledge that a salvage title was allegedly included on the report and intended to include such vehicle, Plaintiff's fraud-based claims against the Progressive Defendants based on the allegedly salvage title vehicle fail. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Indispensable elements of

a fraud claim include . . . knowledge of its falsity [and] intent to defraud . . ."); *Avakian*, 2019 WL 3064426, at *6 (dismissing plaintiff's fraud-based claims, including those under the UCL, due to "conclusory and speculative" allegations related to defendant's intent to defraud); *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (dismissing fraud and fraud-based UCL claims with prejudice because, in part, plaintiff failed to allege facts that plausibly established knowledge or scienter).

***Second***, Plaintiff alleges that the WCTL report misrepresented the fact that Mitchell obtained dealer quotes for certain comparable vehicles. Compl. ¶ 69 (stating that four comparable vehicles "were alleged quotes from dealers"). That allegation is demonstrably false. The four vehicles Plaintiff references on the WCTL report are not identified as quotes from dealers; rather, they include the actual sale price of comparable vehicles identified by location and vehicle identification number ("VIN"). Ex. 2 (WCTL Report, at 5–6). And, in any event, Plaintiff alleges only that "***Mitchell*** never actually obtained a quote" and "misrepresented their claims to" Plaintiff—not that the ***Progressive Defendants*** did any such thing. Compl. ¶ 69. Neither of the alleged misrepresentations related to the WCTL report are therefore sufficiently pled and cannot form the basis of Plaintiff's fraud-based claims.

***b. Plaintiff did not rely on any of the allegedly false statements.***

Plaintiff's fraud-based claims should also be dismissed because she fails to sufficiently plead actual reliance on the allegedly false statements and resulting damage. *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011) (explaining the "elements of fraud which give rise to the tort action for deceit" include, among other things, " justifiable reliance on the misrepresentation" and "resulting damage"). "It is essential … that the person complaining of fraud have actually relied on the alleged fraud, and suffered damages as a result." *Id.* This is equally true for Plaintiff's claims for negligent misrepresentation, as well as for violation of the UCL and CLRA, which similarly require that Plaintiff plead "actual reliance." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002–04 (N.D. Cal. 2009); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112–13 (N.D. Cal. 2016) (holding that plaintiff failed to adequately

plead reliance in support of her CLRA and UCL claims). "Reliance is proved by showing that in the absence of defendant's misrepresentation the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *Marolda*, 672 F. Supp. 2d 992 at 1004 (marks omitted).

The court in *InfoStream*, for example, held that a plaintiff failed to state a claim for fraud because there was no reliance. 2012 WL 3731517, at *10. In that case, the plaintiff, InfoStream, averred that it relied on misrepresentations by PayPal and thus continued to use PayPal to its detriment. *Id.* at *2. InfoStream also alleged, however, that PayPal permanently suspended plaintiff's account *before* any of the alleged misrepresentations were made. *Id.* at *10. In light of the latter allegation, the court concluded as a matter of law that InfoStream could not have relied on PayPal's misrepresentations in *continuing to use* PayPal and therefore dismissed InfoStream's fraud claims. *Id.*

Here—as in *InfoStream*—the Complaint makes clear that Plaintiff did not rely on any alleged misrepresentations in deciding to accept the final settlement offer. After receiving the WCTL report dated February 13, 2018—on which Plaintiff ultimately settled her claim—Plaintiff and her husband spent months disputing the condition adjustments and comparable vehicles contained in the report. Comp. ¶¶ 60, 64, 71, 72, 74, 76, 77, 80, 89, 91. Indeed, Plaintiff readily admits facts that demonstrate a lack of reliance. For example, Plaintiff admits that in her husband's communications with the Progressive Defendants, "Mr. Stack continuously disputed" the "value of the Subject Vehicle," including both the "conditioning adjustment" and the "comparable value listed in the Valuation Report." Compl. ¶¶ 71, 72, 76. Plaintiff also admits that, before settling her claim, "on information and belief" Mr. Stack "determined Progressive and Mitchell had never even contacted the dealers" and "presented this information to Ms. Kallerman." *Id.* ¶ 91. In fact, Plaintiff concedes that she ultimately accepted $4,675.82 to settle her total loss claim because ***she did not want to have to "go through a long and costly process."*** *Id*. ¶ 84 (emphasis added).

Plaintiff's conclusory and vague allegation that "[t]hese and other misrepresentations were relied upon by Plaintiff when she was determining whether to accept the Progressive Defendants' lowball offer" is nothing more than a recitation of the elements of Plaintiff's fraud claim, *id.*¶ 94, and Plaintiff's fraud-based claims accordingly fail for Plaintiff's lack of reliance on any alleged misrepresentation.

**2. Plaintiff Fails to State a Claim for Bad Faith Under California Law.**

An insurer acts in bad faith "when it acts unreasonably in discharging its obligations under the policy." *Gentry v. State Farm Auto Ins. Co.*, 726 F. Supp. 2d 1160, 1166 (E.D. Cal. 2010). Specifically, "[u]nder California law, there are 'at least two elements of an insurance bad faith claim: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause.'" *Massachusetts Casualty Ins. Co. v. Katz*, No. 12-cv-4133-GHK (VBKx), 2012 WL 12886215, at *2 (C.D. Cal. Oct. 17, 2012). Plaintiff's Complaint is insufficient to satisfy either element.

As an initial matter, Plaintiff's Complaint makes clear that her claims are based on a mere disagreement over the valuation of her total loss vehicle, which cannot form the basis of bad faith under California law. *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 839 (2007) (sustaining demurrer where "a genuine dispute existed as to the amount payable on the claim"); *Fraley v. Allstate Ins. Co*., 81 Cal. App. 4th 1282, 1292 (2000) (finding that an insurer can demonstrate a "genuine dispute" where it relies on an expert to determine damages).

Even if a valuation dispute were sufficient, Plaintiff insufficiently alleges that the Progressive Defendants were "unreasonable" in withholding "benefits due" Plaintiff under the Policy. That is, while Plaintiff alleges that "the fair market value" of her vehicle was "significantly higher" than $4,675.82, Plaintiff does not sufficiently allege that this amount was less than "actual cash value" based on the "market value, age, and condition" of her vehicle. Compl. ¶ 95; *id.*, Policy at 23–24. Indeed, Plaintiff does not allege what she claims to have been the actual cash value of her vehicle other than to allege she purchased the vehicle for $25,000.

Compl. ¶¶ 62, 64. But that was in ***May 2009***, almost ten years before Mr. Stack's accident. *Id.* At most, Plaintiff alleges she "suffer[ed] [] [an] approximately $700 loss." *Id.*¶ 84. But she alleges no facts supporting the apparent conclusion that the actual cash value of her vehicle was $700 more than what Plaintiff accepted. Moreover, Plaintiff's Policy specifies that the Progressive Defendants may use computer software developed by a third party in determining the loss payable under the Policy. Policy at 29. The Progressive Defendants did just that in utilizing WCTL. Compl. ¶ 81. Plaintiff, therefore does not allege that the Progressive Defendants acted "unreasonably" in settling her claim, because they determined her vehicle's value in a manner consistent with the express terms of the Policy.

In sum, Plaintiff alleges, at most, that there is a "genuine dispute" over her total loss vehicle's value and fails to sufficiently allege that benefits due under the Policy were unreasonably withheld. *Rappaport-Scott*, 146 Cal. App. 4th at 839. Plaintiff's bad faith claim accordingly fails.

**3. Plaintiff's Breach of Contract Claim Fails Because Plaintiff Insufficiently Alleges That Her Total Loss Was Undervalued.**

As explained above, Plaintiff does not plausibly allege that the Progressive Defendants undervalued her total loss vehicle. *Supra* Section C.3. This also defeats Plaintiff's breach-of-contract claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028–29 (N.D. Cal. 2012) (dismissing breach of contract claim where plaintiffs failed to allege "appreciable and actual damage"). At best, the Complaint makes conclusory and conflicting allegations about how much Plaintiff—or Mr. Stack—thought Plaintiff's total loss vehicle was worth. *Compare* Compl. ¶ 19 (noting that Mr. Stack believed Plaintiff's total loss vehicle was worth $8,500), *with id.* ¶ 84 (alleging Plaintiff "suffer[ed] the approximately $700 loss"). But Plaintiff has alleged no plausible facts that, if true, would establish that the actual cash value of Plaintiff's total loss vehicle was more than what she was offered and accepted. Plaintiff's conclusory allegations are insufficient to allege the damages required for her breach-of-contract claim. *Low*, 900 F. Supp. 2d at 1028–29 (N.D. Cal. 2012) (finding that plaintiffs' "conclusory statement [was] insufficient

to state a claim for breach of contract”).

## V. CONCLUSION

For these reasons, the Progressive Defendants respectfully requests that the Court dismiss Plaintiff’s claims for lack of Article III standing, in favor of appraisal, or in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: March 16, 2020

Respectfully submitted,
KING & SPALDING LLP

*By: /s/ Matthew H. Dawson*
MATTHEW H. DAWSON
JEFFREY S. CASHDAN
ZACHARY A. MCENTYRE
JULIA C. BARRETT

*Counsel for Defendants*
Progressive Select Insurance Company and
Progressive Casualty Insurance Company