UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TASHA STACK, on behalf of herself and on behalf of others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>PROGRESSIVE SELECT INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 20-cv-00338-LB<br><br>**ORDER GRANTING THE DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 46 & 47 |

## INTRODUCTION

This putative class action is predicated on an insurance dispute between an insured, plaintiff Tasha Stack, and her insurance company, defendant United Financial Casualty Insurance Company, about whether United unlawfully undervalued the plaintiff's claim for damages under her insurance policy for the damage to her 2009 Honda Civic in a 2018 traffic accident.[1] The plaintiff submitted a claim to United, which responded with its valuation of the damages.[2] Under the policy, if the parties disagree about the value of a claim, they must obtain appraisals of the

---

[1] Second Am. Compl. ("SAC") – ECF No. 35 at 13–14 (¶ 20), 16–17 (¶¶ 23–24); Coverage Decl. – ECF No. 35-1. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 17 (¶ 25).

ORDER – No. 20-cv-00338-LB

damage, and the policy also precludes a lawsuit against United if the plaintiff does not comply with the policy.[3] The plaintiff sued United and seven of its affiliates, alleging that they used software that deliberately undervalued the actual cash value of her car and claiming fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17209, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784.[4]

United moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the policy-appraisal provision precludes the suit, the plaintiff did not plead fraud with particularity, she did not plead an actual misrepresentation, there is no CLRA remedy because there is no good or service, and there is no actionable UCL claim.[5] The affiliates, which refer to themselves as the non-insuring defendants, moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(2) on the grounds that (1) the plaintiff lacks standing to sue all affiliates because they did not issue the policy or participate in the claim adjudication and (2) there is no personal jurisdiction.[6] The court grants the motions to dismiss.

## STATEMENT

**1. The Insurance Policy**

In July 2009, the plaintiff bought a 2009 Honda Civic EX and obtained car insurance from United that remained in place through February 19, 2018.[7] In the event of a total loss, the policy provided the following coverage:

> Our Limit of Liability under this Part III(B) for property damage to a covered auto arising out of one accident is the lowest of:

---

[3] Policy – ECF No. 35-2 at 29, 36.

[4] Compl. – ECF No. 1.

[5] United Mot. – ECF No. 47.

[6] Non-Insuring Defendants' Mot. – ECF No. 46.

[7] SAC – ECF No. 35 at 13–14 (¶ 20); Coverage Decl. – ECF No. 35-1 at 1 (expired February 20, 2019 at 12:01 a.m.).

ORDER – No. 20-cv-00338-LB                                  2

1. the actual cash value of the covered auto at the time of the accident [determined by the market value, age, and condition of the car at the time of the loss];
2. the amount necessary to replace the covered auto;
3. the amount necessary to repair the covered auto to its pre-loss condition;
4. any Limit of Liability shown on the declarations page for "property damage" under this Part 111(B); or
5. the amount of the deductible for Collision Coverage shown on the declarations page. This subpart only applies if you have paid the premium for Collision Coverage under Part IV — Damage To A Vehicle.[8]

In adjusting claims, United could "use estimating, appraising, or injury evaluation systems," including "computer software, databases, and specialized technology" developed by United or a third party.[9] (The procedures for determining total loss are in California's Total Loss Regulation, 10 C.C.R. § 2695.8(b), which implements the Unfair Insurance Practices Act ("UIPA"), California Insurance Code § 790 *et seq.*) The policy had an appraisal provision that applied if the parties disagreed on the amount of a loss:

> If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, we or you may request that a judge of a court of record, in the county where you reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. You will pay your appraiser's fees and expenses. We will pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.[10]

The policy stated that United "may not be sued unless there is full compliance with all terms of this policy."[11]

---

[8] Policy – ECF No. 35-2 at 21, 28.

[9] *Id.* at 33.

[10] *Id.* at 29.

[11] *Id.* at 36.

ORDER – No. 20-cv-00338-LB                                3

### 2. The Accident and Insurance Claim

On February 9, 2018, the plaintiff's husband — an insured under the policy — was in a multi-vehicle accident that damaged the plaintiff's car.[12] The plaintiff filed a claim under the policy, and United computed the car's actual cash value using a valuation tool called WorkCenter Total Loss, which was developed by third-party vendor Mitchell International.[13] The plaintiff alleges that by using this tool, United deflated the market value of comparable vehicles and discounted the value of her car "based on a standardized practice to never award any insured's vehicle a condition rating that is consistent with the average condition of vehicles of similar makes, years, and models, further driving down market value."[14] As a result, it paid her "an amount less than the ACV [actual cash value]."[15]

On February 28, 2020, United invoked the appraisal condition, and it designated its appraiser on March 5, 2020.[16] The plaintiff did not designate an appraiser on the ground that she had no obligation to do so.[17]

### 3. The Affiliated Entities

The plaintiff names eight defendants (United and seven affiliated entities), alleging that they all exercise "dominion and control over all relevant aspects of underwriting, policy language, and/or claim handling."[18] The plaintiff also alleges that one defendant (The Progressive Corporation) "wholly exercises dominion and control over all relevant aspects of underwriting, policy language, and/or claim handling" for the other affiliates, which she characterizes as

---

[12] SAC – ECF No. 35 at 16 (¶ 23).

[13] *Id.* at 16–17 (¶¶ 23–25); Appraisal Letter, Ex. 2 to Cashdan Decl. – ECF No. 47-3 at 2. The court considers United's appraisal letter under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[14] SAC – ECF No. 35 at 17 (¶ 25).

[15] *Id.* at 12–13 (¶ 19).

[16] Appraisal Letter, Ex. 2 to Cashdan Decl. – ECF No. 47-3 at 2; Designation Letter, Ex. 3 to Cashdan Decl. – ECF No. 47-4 at 2.

[17] Stack Letter, Ex. 4 to Cashdan Decl. – ECF No. 47-5 at 2.

[18] SAC – ECF No. 35 at 6–8 (¶ 9).

1   subsidiaries.[19] All are incorporated, and have principal places of business, in states other than

2   California.[20]

3       The complaint has the following additional allegations about the relationship of the

4   defendants:

> Defendants were the agents, principals, employees, employers, servants, masters, partners, parents, subsidiaries, successors, predecessors, and joint venturers of each other. . . . Defendants were acting with in the course and scope of such agency, employment, partnership, joint venture, and/or other said legal relationship, and with the consent, authority, ratification, approval, and/or permission of each of the other.
>
> . . .
>
> [E]ach Defendant aided and abetted each other Defendant. Each Defendant knowingly gave substantial assistance to each other Defendant who performed the wrongful conduct alleged herein.
>
> [E]ach Defendant was the co-conspirator of each other Defendant . . . [and] [e]ach Defendant entered into an express or implied agreement with each of the other Defendant to commit the wrongs alleged herein.[21]

The defendants provide the following information about the affiliates' operations:

| Name | Operations |
|---|---|
| The Progressive Corp. | Non-operating holding company |
| Progressive Direct Holdings | Non-operating holding company |
| Progressive Commercial Holdings | Non-operating holding company |
| Drive Insurance Holdings | Non-operating holding company |
| Progressive Commercial Casualty Co. | Not engaged in the business of insurance in California at the time of the plaintiff's loss |
| Progressive Casualty | Writes insurance but did not issue the plaintiff's policy |
| Progressive Select | Writes insurance but did not issue the plaintiff's policy[22] |

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 9–10 (¶¶ 12, 14–15).

[22] Uth Decl. – ECF No. 46–1 at 3–6 (¶¶ 4–15).

ORDER – No. 20-cv-00338-LB      5

### 4. Procedural History

The plaintiff filed this lawsuit on January 16, 2020.[23] In the operative complaint, she alleges that United didn't pay her actual cash value for her car and never intended to pay actual cash value (essentially by partnering with Mitchell International to use a valuation tool to deflate actual cash value), and she asserts the following claims based on those predicate allegations: (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) a violation of the UCL; and (6) a violation of the CLRA.[24]

United moved to dismiss the claims under Rule 12(b)(6) for failure to state a claim, and the affiliated entities moved to dismiss under Rule 12(b)(1) for lack of standing and (for five of the defendants) under Rule 12(b)(2) for lack of personal jurisdiction.[25] The court held a hearing on September 10, 2020.

## STANDARD OF REVIEW

### 1. Rule 12(b)(1)

A complaint must contain a short and plain statement of the ground for the court's jurisdiction (unless the court already has jurisdiction and the claim needs no new jurisdictional support). Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). When the complaint is challenged for lack of subject-matter jurisdiction on its face, all material allegations in the complaint will be taken as

---

[23] Compl. – ECF No. 1. The parties consented to the court's jurisdiction. Consents – ECF Nos. 6, 10.
[24] SAC – ECF No. 35 at 22–40 (¶¶ 35–79).
[25] United Mot. – ECF No. 47; Non-Insuring Defendants' Mot. – ECF No. 46.

true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). But in deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court for evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1922); *see St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004); *see McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

### 2. Rule 12(b)(2)

"'In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2001).

"'Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza*, 793 F.3d at 1068 (some internal quotation marks omitted) (quoting *CollegeSource*, 653 F.3d at 1073). "[U]ncontroverted allegations must be taken

as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the 'bare allegations of the complaint.'") (internal brackets omitted) (quoting *Schwarzenegger*, 374 F.3d at 800).

### 3. Rules 12(b)(6) and 9(b)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud. . . . Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

### 4. Leave to Amend

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (cleaned up).

## ANALYSIS

### 1. United's Motion to Dismiss

United moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the policy-appraisal provision precludes the suit, the plaintiff did not plead fraud with particularity, she did not plead an actual misrepresentation, there is no CLRA remedy because there is no good or service, and there is no actionable UCL claim for violation of an insurance statute.[26] The court grants the motion.

First, United demanded an appraisal, and under the appraisal provision, the parties each "shall" select an appraiser.[27] That provision is akin to an arbitration agreement: "It is well settled that an

---

[26] United Mot. – ECF No. 47.

[27] Policy – ECF No. 35-2 at 29.

agreement to conduct an appraisal contained in a policy of insurance . . . is considered to be an arbitration agreement subject to the statutory contractual arbitration law." *Lambert v. Carneghi*, 158 Cal. App. 4th 1120, 1129 (2008) (cleaned up). Compliance with the provision becomes a condition precedent to suing under the policy. *Pavlina v. Safeco Ins. Co.*, No. 12-cv-534-LHK, 2012 WL 5412796, at *6 (N.D. Cal. Nov. 6, 2012). The policy here confirms that: United "may not be sued unless there is full compliance with all the terms of this policy."[28] *Pavlina*, 2012 WL 5412796, at *6; *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1098–99 (E.D. Cal. 2009), *aff'd*, 407 F. App'x 191 (9th Cir. 2010).

The plaintiff's arguments do not compel a different result. She contends that the provision applies only to the breach-of-contract claim,[29] but courts have dismissed non-contract claims based on similar appraisal provisions. *Enger*, 682 F. Supp. 2d at 1096–97, 1099 (dismissing contract and non-contract claims, such as UCL and CLRA claims); *Pavlina*, 2012 WL 5412796, at *11 (dismissing claims for breach of contract and bad faith). She contends that the appraisal is permissive, not mandatory, but once a party invokes appraisal, under the contract, the parties' separate appraisals are mandatory. (United does not contend that the plaintiff had to invoke appraisal and contends only that its invocation triggers the plaintiff's obligation. *Cf. Ceausu v. Progressive Cas. Ins. Co.*, No. CV 12-6254 PSG (VBKx), 2013 WL 12131280, at *9 (C.D. Cal. 2013) (discussing only whether an insured had to invoke appraisal before filing suit, not whether appraisal was mandatory after the insurer invoked the appraisal provision).) Finally, the plaintiff contends that the appraisal clause is unconscionable, but — like arbitration clauses — it is not. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1274 (9th Cir. 2017) (reversing order denying motion to compel arbitration of plaintiff who sought to represent a putative class). The plaintiff otherwise does not explain how the contract is procedurally or substantively unconscionable.

Second, the plaintiff did not plead fraud with particularity or a identify a particular misrepresentation. Fed. R. Civ. P. 9(b). She alleges that United used the valuation tool to lowball

---

[28] *Id.* at 36.

[29] Opp'n – ECF No. 54 at 8–9.

1  its estimates, but — coupled with a dispute resolution procedure that allows appraisals — the
2  allegations show only a valuation dispute, not fraud or a misrepresentation. She similarly does not
3  plead facts about bad faith in the valuation. Indeed, she does not plead any facts about the alleged
4  undervaluation and instead alleges only conclusorily that United undervalued her 2009 Honda.

   Third, there is no CLRA claim because there is no good or service. The CLRA prohibits unfair
and deceptive practices in transactions resulting in the "sale or lease of goods or services to any
consumer." Cal. Civ. Code § 1770(a). The CLRA does not apply to the sale of insurance policies
because insurance is not a good or service. *Bruckley v. Cracchiola*, No. 2:13-cv-4609-CAS
(PJWx), 2014 WL 545751, at * 7–8 (C.D. Cal. Feb. 7, 2014) (automobile insurance); *see Sanders
v. Choice Mfg. Co., Inc.*, No. 11-3725 SC, 2011 WL 6002639, at *1, 6 (N.D. Cal. Nov. 30, 2011).
The plaintiff contends that the appraisal tool is a good or service, but that does not turn an
insurance dispute into a CLRA claim. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009)
(rejecting argument that the labor of insurance-company employees allowed a CLRA claim).

   Fourth, there is no actionable UCL claim. The fraud claim fails and thus is not a predicate
violation. The alleged unfair and unlawful practices are United's alleged violation of the UIPA
and the California Total Loss Regulation.[30] They are not predicates for a UCL claim. *Jones v.
Progressive Cas. Ins. Co.*, No. 3:16-cv-06941-JD, 2018 WL 4521919, at *4 (N.D. Cal. Sept. 19,
2018) (citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287 (1988)).

## 2. The Affiliates' Motion

   For the reasons set forth in the previous section, the claims fail on the merits. The plaintiff also
has not shown standing or personal jurisdiction.

### 2.1 Standing

   Federal-court jurisdiction extends only to "cases" and "controversies." *Raines v. Byrd*, 521
U.S. 811, 818 (1997); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish
standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

---

[30] SAC – ECF No. 35 at 28–35 (¶¶ 63–68).

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As to the causation prong, Article III requires "a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) (ellipses in original)).

United wrote the policy here. The only allegations about the non-insuring defendants are that they essentially operate as one and that all exercise "dominion and control over all relevant aspects of underwriting, policy language, and/or claim handling."[31] These are conclusions, not fact allegations. They do not show, for example, alter-ego liability, meaning, (1) such unity of interests and ownership that the separate personalities of the entities no longer exist, and (2) not imposing alter-ego liability creates an inequitable result. *Mesler v. Bragg Mgt. Co.*, 39 Cal. 3d 290, 300 (1985); *Pacific Bell Tel. Co. v. 88 Connection Corp.*, No. 15-cv-04554-LB, 2016 WL 3257656, at * 2 (N.D. Cal. June 14, 2016) (citations omitted). They do not establish any involvement of any entity but United. It is the plaintiff's burden to show jurisdiction. She has not.

**2.2 Personal Jurisdiction**

The same analysis applies to the personal-jurisdiction inquiry. The plaintiff has not alleged any facts establishing personal jurisdiction over the affiliate defendants.

"The general rule is that personal jurisdiction over a defendant is proper if permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2005). The due-process inquiry is whether the defendant has minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notices of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). The inquiry about whether a forum may assert specific personal jurisdiction over a nonresident defendant focuses on the

---

[31] *Id.* at 6–8 (¶ 9).

relationship among the defendant, the forum, and the litigation. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017); *Walden v. Flore*, 571 U.S. 277, 284 (2014). This due-process inquiry for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). The plaintiff has the burden of satisfying the first two prongs of the test. *Picot*, 780 F.3d at 1211. The burden then shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would be unreasonable. *Id.* at 1212.

The analysis in the last section drives the result here: the plaintiff does not allege facts and only concludes that the affiliate defendants acted as one and controlled the "relevant aspects of underwriting, policy language, and claim handling," presumably because of their affiliate relationship.[32] That does not establish a joint enterprise or any involvement of any defendant (except United, which wrote the policy) in the dispute here. In sum, no fact allegations establish jurisdiction — general or specific — over the defendants. *See Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 5833636, at *2 (N.D. Cal. Nov. 15, 2011) ("because Plaintiffs do not allege that they bought any insurance policies from any of the Moving Parties, it follows that Plaintiffs did not suffer any injury due to the conduct of the Moving Parties, which means that Plaintiffs lack Article III standing to bring a case against the Moving Parties."). Also, as the chart in the Statement shows, four defendants are holding companies that do not conduct any insurance activity, and the fifth does not write insurance or engage in any business in California.

---

[32] *Id.*

# CONCLUSION

The court grants the defendants' motions to dismiss. The plaintiff may file an amended complaint by October 1, 2020, if she can cure the deficiencies that the court has identified. If she files an amended complaint, she must file as an attachment a blackline of her new amended complaint against her Second Amended Complaint. If she does not file an amended complaint, the court will enter judgment in favor of the defendants.

This disposes of ECF Nos. 46 and 47.

**IT IS SO ORDERED.**

Dated: September 14, 2020

_____
LAUREL BEELER
United States Magistrate Judge